### STATE v. ADDISON E. WILSON.

#### *Indictment—Defacing Tomb-stones.*

1. In indictments for statutory misdemeanors, it is generally sufficient, if the indictment follows the words of the statute.

2. In an indictment under the statute, (The Code, §1088), for defacing or destroy-ing a tomb-stone, it is not necessary to designate the name of the person whose tomb has been defaced, nor is it necessary to charge in the indictment, in terms, that the dead body was that of a human being.

3. Where it appears that there was a burying ground, on land belonging to the defendant, and that he caused his employés to plough it up, and displace the grave-stones, *It was held*, some evidence to go to the jury that the defendant was guilty under the Act.

4. Where the owner of land consents, either expressly or by implication to the interment of dead bodies on his land, he has no right to afterwards remove the bodies, or to deface or pull down the grave-stones and monuments erected to perpetuate their memory.

(*State* v. *Credle*, 91 N. C., 640, cited and approved).

INDICTMENT, tried before *Gilmer, Judge,* and a jury, at Fall Term, 1885, of the Superior Court of ORANGE county.

The defendant was indicted for a violation of the statute, (The Code, §1088), which provides as follows: " If any person shall, unlawfully and on purpose, remove from its place, any monu-ment of marble, stone, brass, wood, or other material, erected for the purpose of designating the spot where any dead body is

interred, or for the purpose of preserving and perpetuating the memory, name, fame, birth, age, or death, of any person, whether situated in or out of the common burying ground, or shall unlawfully or on purpose, break or deface such monument, or alter the letters, marks, or inscriptions thereof, he shall be guilty of a misdemeanor."

The indictment alleges, that the defendant, "at and in the county of Orange aforesaid, unlawfully, wilfully, and on purpose, did remove from its place, a certain monument of stone, erected for the purpose of designating the spot where a certain dead body was buried, contrary to the statute," &c.

The following is a copy of the material parts of the case settled upon appeal for this Court:

"George W. Tate, a witness for the State, testified, that he had known Willowdale Burial Ground all his life, and lived in a mile of it. He was proceeding to testify further as to the existence of monuments in said burial ground, when defendant, through his counsel, objected to any evidence of the existence or removal of any monuments, as there was no allegation in the bill of indictment, of any spot where a dead body was buried, or place where a monument was erected, or the name of any person over whom a monument had been placed, or anything to inform the defendant, what charge he had to meet. The objection was overruled, and defendant excepted.

The witness then answered, that defendant owned land on which said burial place is located, in which a large number of stones were erected, to indicate the place of burial of dead bodies. Defendant cleared this place, and ploughed it up, the last of April or first of May, 1883. Witness' parents and grandparents were buried there, and hence witness went there, and noticed that stones had been thrown down, by felling trees and ploughing. The tombstones were torn off or scattered. Afterwards, witness obtained leave from defendant to inclose the graves of witness' parents and grand parents. This was in the Spring of 1883. Ploughing was going on when witness was

building the pailing, and that at his last visit to the burial ground, the last of April or the first of May, he saw defendant's hands ploughing up and removing the stones or monuments.

On cross-examination, witness said that he could not say, without knowing when the presentment was made, whether any stone had been removed in two years prior thereto. Witness never saw defendant move any at any time—saw his hands and employés remove them; saw the stones crushed down by timber, the last of March or first of April, 1883.

Upon this testimony, the State closed, and there was no evidence offered by the defendant.

The Solicitor asked the following instructions, which were given:

1st. If the jury believe that the defendant, either by himself, or by others under his orders, removed any stone used to designate the resting place of a dead body, he would be guilty.

2nd. If the jury find such removal took place the latter part of April, or the first part of May, 1883, then this action is not barred by the statute of limitations, the presentment having been made at Spring Term, 1885, (the first week in April, 1885.)

The following instructions asked by the defendant, were refused:

1. That upon the evidence in this case, the defendant cannot be convicted, as there is no proof that the defendant removed or ordered the removal of any monument.

2. That there is no evidence that any monument was removed within two years prior to the presentment in this case.

3. That there is no proof that the monument of any person was removed.

At the request of the defendant, the following were given:

1. That the jury must be satisfied beyond a reasonable doubt, that the defendant removed a monument within two years prior to the presentment in this case.

2. That the jury must be satisfied that the monument of some person was actually removed, within two years prior to the presentment in this action.

There was a verdict of guilty, and defendant moved for a new trial, upon the ground that there was no evidence sufficient to sustain the finding of the jury, that the defendant, through himself or others, removed any monument within two years prior to the presentment. This motion was denied.

The defendant then moved in arrest of judgment, on the ground that the indictment failed to allege any place where a monument was erected, whose monument it was, whose dead body was interred, or whose memory was preserved.

The defendant assigns as error, the admission of the testimony objected to, the refusal to give the instructions asked, and the giving of those asked on the part of the State, the denial of the motion for a new trial, and the refusal of the motion in arrest of judgment.

The Court gave judgment, and the defendant appealed to this · Court.

*Attorney General,* for the State.
*Mr. John W. Graham,* for the defendant.

MERRIMON, J. (after stating the facts). It is true, that the offence is charged in the indictment in very general terms. But it must be conceded, that the offence is plain and simple in its nature, and that the constituent facts are few, and unattended by the slightest complication.

The charge is made substantially, indeed, almost in the very words of the statute, creating and defining the offence, and completely describes it. The Court could see, and the defendant could see and understand, exactly what was charged against him, and learn what was necessary for his defence, if he had any. In indictments for such plain statutory misdemeanors, it is sufficient to charge the offence in the words of the statute. *State* v. *Credle,* 91 N. C., 640, and the authorities there cited; *Commonwealth* v. *McMillan,* 101 Mass., 34; *State* v. *Brocken,* 32 Texas, 611; Bishop on Stat. Cr., §§1098, 1099.

It was not necessary, as was insisted on the argument, to charge that the monument was intended to designate the spot where the dead body of a particular person named, or a person unknown, was interred. The statute is general and comprehensive in its terms, and makes it indictable to remove the monument intended to designate the spot where *any* dead body, no matter whose it may have been, is interred.

Nor was it necessary to charge in terms, that the dead body was that of a dead person. This appears sufficiently from the purpose and language of the statute. Monuments such as are indicated, are usually erected to mark the spot where dead human bodies are interred, and to perpetuate "the memory, name, fame, birth, age or death of persons," and therefore, when the statute mentions dead bodies in such connection, it must be understood to apply to such dead bodies, unless it expressly, or by clear implication, intends a different sort of dead body.

It was contended on the argument, that if the defendant should be again indicted for the same offence, he could not successfully plead former conviction. This is a mistaken view. He could not do it so readily perhaps, as he could if the charge had been more specific, but he certainly could easily prove that he had been convicted in this case, and insist that his plea should be sustained, unless the State should prove that he had committed more than one such offence. The offence is so simple in its nature, the constituent facts are so few, that there could not be serious difficulty in making such defence.

It is clear, that there was evidence to go to the jury tending to prove the charge in the indictment. A witness testified, that there was in the county of Orange, a particular burying ground—that he lived near it—had known it a long while—that his father and grandfather were buried there—that he erected an enclosure around their graves, with the express permission of the defendant—that tombstones, erected to mark the place where dead bodies were buried, were torn off from their places, and scattered—that the defendant owned the land, and ploughed it within two

years next before the presentment—that this was done by the defendant's employés, with his knowledge, and there were circumstances in evidence, that went directly to show, by reasonable inference, that it was done by his command. There was strong direct and circumstanstantial evidence, and such as warranted the jury in finding a verdict of guilty. The indictment having been held to be sufficient, the evidence was relevant and pertinent.

It was suggested on the argument, that the defendant, being the owner of the land, had the legal right to remove the monuments, however indecent, improper, and censurable it might be in a moral point of view, to do so. This view, it seems to us, is wholly untenable. It does not appear that the defendant was the owner of the land, but granting that he was, it was decent, orderly and proper to bury the dead, they were buried, and the defendant, or those under whom he claimed title to the land, if he had title, must be presumed to have assented to and sanctioned the use of it for burial purposes, and having done so, he had not the right to remove the dead bodies interred there, or the memorial stones erected by the hand of affection and respect, and much less had he the right to desecrate the place, by felling the trees, ploughing the ground, and throwing down and scattering the grave stones. Such desecration shocks the moral sense of mankind, while it brings shameful reproach upon its authors. The law does not tolerate, but on the contrary forbids such acts, as criminal offences of serious moment.

Causes might arise that would require and justify the removal of dead bodies from one place of interment to another, but such removal should be made, with the sanction of kindred, in a proper way, or by legislative sanction.

It is not questioned that the Legislature has the authority to protect burial grounds, and monuments to the dead, from desecration and outrage of every kind, by declaring such acts criminal, and the imposition of adequate punishment by fine and imprisonment, one or both. The Court properly refused to arrest the judgment.

We discover no error in the record.    Let this opinion be certified to the Superior Court according to law.    It is so ordered.