DILLON, Judge.
 

 *91
 
 Marianne and Robert Orr ("Defendants") appeal from the trial court's grant of Plaintiffs' request for declaratory judgment. For the following reasons, we affirm.
 

 I. Background
 

 This matter stems from a long-standing dispute concerning a family cemetery located on Defendants' property. This dispute has been the subject of numerous appeals to this Court. A comprehensive factual background of the dispute is discussed in our opinion from the first appeal.
 
 See
 

 King v. Orr
 
 ,
 
 209 N.C.App. 750
 
 ,
 
 709 S.E.2d 602
 
 (2011) (unpublished) ("
 
 King I
 
 ").
 

 The facts relevant to this appeal are as follows: Robert King, Margaret Whaley, and A. William King ("Plaintiffs") are descendants of the individuals interred in the cemetery (the "King Family Cemetery") located on property now owned by Defendants, who are not related to the King family. In 2012, the Pender County Board of County Commissioners granted consent to Defendants to disinter and relocate the bodies located in the King Family Cemetery pursuant to
 
 N.C. Gen. Stat. § 65-106
 
 (2011).
 
 [1]
 

 Plaintiffs subsequently filed for a declaratory judgment, requesting that the trial court review the Commissioners' decision. In 2014, the trial court entered a declaratory judgment in favor of Plaintiffs, concluding as a matter of law that the Commissioners' grant of consent was based on an improper interpretation of
 
 N.C. Gen. Stat. § 65-106
 
 , that it was unreasonable, arbitrary, and irrational, that it violated previous court decisions, and that it constituted an abuse of discretion. In
 
 King v. Pender County
 
 , --- N.C.App. ----,
 
 775 S.E.2d 695
 
 (2015) (unpublished) ("
 
 King V
 
 "), we reversed the trial court's judgment and remanded the matter to allow the trial court to make a specific finding as to whether the cemetery was "abandoned," in accordance with
 
 *92
 

 N.C. Gen. Stat. § 65-106
 
 (a)(4) and § 65-85, and to modify its findings of fact and conclusions of law, if necessary.
 

 In August 2015, the trial court again entered a declaratory judgment in favor of Plaintiffs, specifically finding that Plaintiffs are "persons 'with legal right to the real property[,]' " and that "the cemetery is not an 'abandoned cemetery.' " Defendants timely appealed.
 

 II. Analysis
 

 We agree with the trial court that Plaintiffs are "person[s] with legal right to the real property" and that they have not "abandoned" the cemetery. Therefore, we affirm the judgment of the trial court.
 

 N.C. Gen. Stat. § 65-106
 
 allows for "any person, firm, or corporation who owns land on which an
 
 abandoned
 
 cemetery is located[,] after first securing the consent of the governing body of the municipality or county in which the abandoned cemetery is located[,]" to "effect the disinterment, removal, and reinterment of graves."
 
 N.C. Gen. Stat. § 65-106
 
 (a)(4) (emphasis added). That is, landowners have the right to remove graves from their property where the graves have been "abandoned" so long as they follow certain procedures. "Abandoned" is defined in Chapter 65 as: "[c]eased from maintenance or use by the
 
 person with legal right to the real property
 
 with the intent of not again maintaining the real property in the foreseeable future."
 
 N.C. Gen. Stat. § 65-85
 
 (1) (2011) (emphasis added).
 

 When interpreting
 
 N.C. Gen. Stat. § 65-106
 
 and § 65-85(1), we must first look to the "plain words of the statute."
 
 Elec. Supply Co. of Durham, Inc. v. Swain Elec. Co., Inc
 
 .,
 
 328 N.C. 651
 
 , 656,
 
 403 S.E.2d 291
 
 , 294 (1991). "Moreover, we are guided by the structure of the statute and certain canons of statutory construction.... An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute."
 

 Id.
 

 *682
 
 Here, we conclude that Plaintiffs are persons "with legal right to the real property," notwithstanding the fact that they do not hold a fee or leasehold interest in the real property. To hold that persons "with legal right" include only those who own the property would render the statute's requirement that the cemetery be "abandoned" almost meaningless: it is the
 
 owner
 
 who seeks consent from the government to remove the graves. Further, it would ignore the provision in the same Chapter providing a mechanism by which descendants can obtain a court order recognizing their right to access the property of another to visit and maintain the graves of their ancestors.
 
 See
 

 N.C. Gen. Stat. § 65-102
 
 .
 

 *93
 
 Our Supreme Court has long recognized that persons, other than the holder of the fee and leasehold interest, may have "legal right to real property." For example, the right to hunt or fish on the land of another is considered an interest in real estate subject to our Statute of Frauds, set forth in
 
 N.C. Gen. Stat. § 22-2
 
 , as is the right to remove timber or extract coal.
 
 See
 

 Council v. Sanderlin
 
 ,
 
 183 N.C. 253
 
 , 257-58,
 
 111 S.E. 365
 
 , 367 (1922). Further, our Supreme Court has long recognized the right to use another's land in the form of an easement.
 
 See
 

 Davis v. Robinson
 
 ,
 
 189 N.C. 589
 
 , 598,
 
 127 S.E. 697
 
 , 702 (1925) (describing appurtenant easements and easements in gross).
 

 And, relevant to the present case, our Supreme Court has long recognized the right of
 
 certain
 
 descendants to enter upon the land of another to visit and maintain the graves of their ancestors, stating as follows:
 

 Persons having a right to protect private cemeteries or graves therein may erect a fence around the cemetery[,] ... [and] any member of a family whose dead were buried in a family cemetery might enjoin the removal of a fence or an interference with any portion of the cemetery. However, any one or more of the heirs of persons buried in a private cemetery may prevent an interference with the
 
 rights held in common
 
 .
 

 Rodman v. Mish
 
 ,
 
 269 N.C. 613
 
 , 616,
 
 153 S.E.2d 136
 
 , 138 (1967) (internal citations omitted) (emphasis added). This right is rooted in the long-held view that landowners do not have an unfettered right to remove graves that are located on their land, as expressed by our Supreme Court in the 1800s:
 

 [A landowner] had not the right to remove the dead bodies interred there, or the memorial stones erected by the hand of affection and respect....Causes might arise that would require and justify the removal of dead bodies from one place of interment to another, but such removal should be made,
 
 with the sanction of kindred
 
 , in a proper way, or by legislative sanction.
 

 State v. Wilson
 
 ,
 
 94 N.C. 1015
 
 , 1020 (1886) (emphasis added). In the 1900s, the Court reiterated this view:
 

 Courts are reluctant to require disturbance and removal of bodies that have once been buried, for courts are sensitive to all those emotions that men and women hold for sacred in the disposition of their dead.... The aversion to disturbance of one's remains is illustrated by Shakespeare's choice of his own epitaph:
 

 *94
 
 Good friend, for Jesu's sake forbear
 

 To dig the dust enclosed here.
 

 Blest be the man that spares these stones,
 

 And curst be he that moves my bones.
 

 Mills v. Carolina Cemetery
 
 ,
 
 242 N.C. 20
 
 , 27,
 
 86 S.E.2d 893
 
 , 898 (1955) (internal marks omitted).
 

 More recently, in 1987, our General Assembly enacted
 
 N.C. Gen. Stat. § 65-102
 
 , providing a procedure by which certain persons may obtain a court order recognizing their right to access the private lands of others in order to maintain graves and cemeteries located thereon.
 

 In the present case, Plaintiffs did obtain an order, pursuant to
 
 N.C. Gen. Stat. § 65-102
 
 , allowing them access to Defendants' property in order to maintain and visit the King Family Cemetery. And we note that during the course of this dispute, we have held that Plaintiffs have rights "in and to the cemetery."
 
 King I
 
 ,
 
 209 N.C.App. 750
 
 ,
 
 709 S.E.2d 602
 
 ,
 
 2011 WL 532295
 
 at *3. This conclusion was the basis of our Court's decision in
 
 King I
 
 that Plaintiffs, "as members of a family
 
 *683
 
 whose dead were buried in the [King Family Cemetery], are entitled to enjoin the removal of the fence or the interference with any portion of the cemetery."
 
 King V
 
 , --- N.C.App. ----,
 
 775 S.E.2d 695
 
 ,
 
 2015 WL 3793248
 
 at *3 (citing
 
 King I
 
 ,
 
 209 N.C.App. 750
 
 ,
 
 709 S.E.2d 602
 
 ,
 
 2011 WL 532295
 
 at *9 ). This decision was reaffirmed in
 
 King V
 
 when this Court held that "based on [precedent], the binding language in
 
 King I
 
 , and the uncontested fact that [P]laintiffs are members of the King family," Plaintiffs suffered an injury in fact and therefore had standing to bring a declaratory judgment action.
 
 Id.
 
 at *3.
 

 III. Conclusion
 

 Plaintiffs qualify as "person[s] with a legal right" to the King Family Cemetery. This litigation first arose as the result of Plaintiffs' attempts to maintain and protect the King Family Cemetery. The record contains evidence that Plaintiffs have consistently maintained or attempted to maintain the King Family Cemetery throughout the long history of this litigation and that Plaintiffs intend to continue to maintain it in the future. Therefore, because Plaintiffs qualify as "person[s] with legal right" and Plaintiffs have
 
 not
 
 abandoned the King Family Cemetery, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge STROUD concur.
 

 [1]
 

 N.C. Gen. Stat. § 65-106
 
 allows for the disinterment, removal, and reinterment of graves with the consent of the governing body of the municipality or county in which an
 
 abandoned
 
 cemetery is located.
 
 See
 

 N.C. Gen. Stat. § 65-106
 
 (a)(4).